IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BENTLEY COOKS<br>1704 Mound Road<br>Lima, Ohio 45805 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES<br>AND REINSTATEMENT** |
| FORD MOTOR COMPANY<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219 | )<br>)<br>)<br>)<br>)<br>) | **Jury Demand Endorsed Herein** |
| Defendant. | ) | |

Plaintiff, Bentley Cooks, by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

### PARTIES, JURISDICTION, AND VENUE

1. Cooks is a resident of the City of Lima, County of Allen, State of Ohio.

2. Ford Motor Company (hereinafter "Ford") is a foreign corporation that operated a business located at 1155 Bible Road, Lima, Ohio 45801.

3. Ford was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

4. All of the material events alleged in this Complaint occurred in Allen County.

5. Within two years of the adverse actions discussed herein, Cooks filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") pursuant to R.C. § 4112.051(C)(2).



6. On December 17, 2020, the OCRC issued a Letter of Determination for Cooks' OCRC charge, permitting him to file a civil action related to this claims, pursuant to R.C. § 4112.051 and R.C. § 4112.052.

7. Cooks has filed this matter within two years of the applicable statute of limitations related to his claims and allegations in this matter.

8. Cooks has filed this matter within the applicable period of time provided in R.C. § 4112.052.

9. Cooks has properly exhausted his administrative remedies through the OCRC, pursuant to R.C. § 4112.051 and R.C. § 4112.052, prior to filing this civil action.

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds the sum or value of $ 75,000.

11. Cooks has met and exceeded the amount in controversy requirement as he has requested herein: "An award against Defendant of compensatory and monetary damages to compensate Cooks for lost wages, compensatory damages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim;" "An award of punitive damages for Plaintiff against Defendant in an amount in excess of $ 25,000;" and reasonable attorneys' fees. *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943) (courts must consider both actual and punitive damages when determining amount in controversy); *Shupe v. Asplundh Tree Expert Co.*, Case No. 13-5747, 2014 U.S. App. LEXIS 9668, *10 (6th Cir. 2014) (courts must consider attorneys' fees when determining amount in controversy).

12. This Court has jurisdiction over Cooks' state law claims pursuant to 28 U.S.C. § 1332.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.



## FACTS

14. Cooks is a former employee of Ford.

15. On or about April 11, 2016, Cooks began working for Ford.

16. Ford employed Cooks as an Engine Technician.

17. Cooks is African American.

18. On or about May 25, 2018, Cooks requested to leave work due to a family emergency. ("Family Emergency").

19. Cooks asked Sonya Last Name Unknown to leave due to the Family Emergency.

20. Sonya LNU was a supervisor for Ford.

21. During all material events mentioned herein, Sonya LNU had and/or has authority to hire, fire, and/or discipline employees.

22. Sonya LNU did not participate in the decision to hire Cooks.

23. Sonya LNU is Caucasian.

24. Sonya LNU informed Cooks his Family Emergency would wait.

25. Sonya LNU instructed Cooks to go back to work despite his Family Emergency.

26. Cooks told Sonya LNU he was leaving work due to the Family Emergency.

27. Upon information and belief, Ford has a progressive disciplinary system. ("Progressive Discipline Policy").

28. The first step in the Progressive Discipline Policy is a written warning.

29. The next step in the Progressive Discipline Policy is a suspension.

30. When Cooks left work due to his Family Emergency, he had no prior discipline in his file.

31. After Cooks left work due to his Family Emergency, Sonya LNU persuaded Ford to skip a step in the Progressive Discipline Policy to punish Cooks.



32. After Cooks left work due to his Family Emergency, Ford suspended Cooks for three days.

33. Ford allowed Caucasian employees time off work for emergencies without discipline.

34. Alternatively, Ford allowed Caucasian employees to leave work due to emergencies with only a written warning.

35. Ford skipped a step in their Progressive Discipline Policy when it suspended Cooks prior to giving him a written warning.

36. During the course of 2018, Cooks was written up and suspended several times for using the bathroom.

37. When Cooks used the bathroom during his shift, Ford disciplined him for "job abandonment."

38. Cooks was not abandoning his job by using the bathroom.

39. Caucasian employees were allowed to use the bathroom during their shifts without discipline.

40. Caucasian employees were allowed to use the bathroom without "job abandonment" charges.

41. In late 2018, Cooks' Union Representative, Tim Rist, warned Cooks, "you have a target on your back." ("Target on Your Back Comment").

42. The Target on Your Back Comment was made in front of Ford Human Resources.

43. The Target on Your Back Comment warned Cooks that the supervisors at Ford were targeting him.

44. The Target on Your Back Comment warned Cooks he was the subject of retaliation.

45. Caucasian employees did not have to be warned they were being targeted.

46. Caucasian employees were not targeted by supervisors.

47. In or around October 2018, Cooks contacted Ford's Ethics Hotline. ("First Race Discrimination Complaint").



The Employee's Attorney.™

48. In Cooks' First Race Discrimination Complaint, Cooks complained of the harassment and discrimination he faced.

49. During his employment with Ford, Cooks complained about the discrimination, harassment, and retaliation he experienced multiple times.

50. On or about July 18, 2019, Cooks was given another disciplinary action for using the restroom. ("July 18 Discipline").

51. The July 18 Discipline accused Cooks of job abandonment.

52. The July 18 Discipline was based on the presumption Cooks had used the restroom without permission.

53. Tracy Vierra was a junior supervisor at Ford.

54. During all material events asserted herein, Vierra had and/or has authority to hire, fire, and/or discipline employees.

55. Vierra did not participate in the decision to hire Cooks.

56. Vierra is Caucasian.

57. The July 18 Discipline was given to Cooks when Vierra saw Cooks walking between the bathroom and the line.

58. When Vierra saw Cooks walking between the bathroom and the line, she had no reason to suspect Cooks did not have permission to use the bathroom.

59. When Vierra saw Cooks walking between the bathroom and the line, she wrote him up for "job abandonment," resulting in the July 18 Discipline.

60. When Vierra gave Cooks the July 18 Discipline, she did not ask Cooks if he had permission to use the restroom.



61. When Vierra gave Cooks the July 18 Discipline, she did not ask Cooks' supervisor if he had permission to use the restroom.

62. At the time of the July 18 Discipline, Cooks did have permission to use the restroom.

63. Anthony Miller worked for Ford as a Line Leader.

64. Anthony Miller was Cooks' immediate supervisor at the time of the July 18 Discipline.

65. During all material event asserted herein, Anthony Miller had and/or has authority to hire, fire, and/or discipline employees.

66. Anthony Miller did not participate in the decision to

67. At the time of the July 18 Discipline, Anthony Miller had given Cooks permission to use the restroom.

68. Despite having permission to use the restroom, Ford pushed forward on the July 18 Discipline.

69. The July 18 Discipline was an adverse employment action.

70. The July 18 Discipline was an adverse action.

71. Ford has used the Progressive Discipline Policy when disciplining employees who have not complained of discrimination and harassment.

72. When Caucasian employees had permission to use the restroom, they were not then disciplined for using the restroom.

73. As a result of the July 18 Discipline, Cooks asked to meet with Chris Miller on or about July 19, 2019. ("July 19 Complaint").

74. Chris Miller is Caucasian.

75. Ford employed Chris Miller as a supervisor.



76. During all material events asserted herein, Chris Miller had and/or has authority to hire, fire, and/or discipline employees.

77. During the July 19 Complaint, Cooks complained about his writeup for job abandonment.

78. During the July 19 Complaint, Cooks complained about the race discrimination he experienced.

79. During the July 19 Complaint, Chris Miller became aggressive.

80. During the July 19 Complaint, Chris Miller yelled at Cooks to "shut up."

81. Cooks reported Chris Miller's conduct during the July 19 Complaint to his Union Representative, Nick Huffman.

82. Huffman advised Cooks to report Chris Miller's behavior to Ford Human Resources.

83. Cooks went to meet with Ford Human Resources on or about July 22, 2019. ("Attempted Complaint.")

84. At the time of Cooks' Attempted Complaint, his badge had been rendered inactive.

85. At the time of Cooks' Attempted Complaint, his employment had been terminated.

86. Defendant's stated reason for termination was that Cooks left the line without permission.

87. Cooks had permission to leave the line.

88. Defendant's purported reason for termination is pretext for race discrimination.

89. Defendant's purported reason for termination is pretext for retaliation.

90. Defendant's termination of Cooks' employment was an adverse employment action.

91. Defendant's termination of Cooks' employment was an adverse action.

## COUNT I: RACE DISCRIMINATION

92. Cooks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.



93. Throughout his employment, Cooks was fully competent to perform his essential job duties.

94. Ford treated Cooks differently than other similarly situated employees based on his race.

95. Ford violated Ohio Revised Code § 4112.02(A) *et seq.*by discriminating against Cooks due to his race.

96. On or about July 22, 2019, Ford terminated Cooks without just cause.

97. At all times material herein, similarly, situated non-African-American employees were not terminated without just cause.

98. Defendant terminated Cooks based on his race.

99. Defendant violated O.R.C. § 4112.01 et. seq. when they terminated Cooks based on his race.

100. Cooks suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

101. As a direct and proximate result of Defendant's conduct, Cooks has suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT II: RETALIATORY DISCRIMINATION**

102. Cooks restates each and every prior paragraph of this complaint, as if it were fully restated herein.

103. As a result of the Defendant's discriminatory conduct described above, Cooks complained about the race discrimination, harassment, and retaliation he was experiencing.

104. Subsequent to Cooks complaining about race discrimination and harassment, he was subjected to continuing race discrimination, harassment.

105. Subsequent to Cooks complaining about race discrimination and harassment, he was disciplined for using the restroom even though he had permission.

106. Subsequent to Cooks complaining about race discrimination and harassment, his employment was terminated.

107. Defendant's actions were retaliatory in nature based on Cooks 's opposition to the unlawful discriminatory conduct.

108. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

109. Cooks suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

110. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Cooks, he/she suffered and will continue to suffer damages, including economic and emotional distress damages.

## DEMAND FOR RELIEF

WHEREFORE, Bentley Cooks demands from Defendant the following:

(a) Issue an order requiring Ford Motor Company to restore Cooks to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Cooks for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Cooks' claims as allowable under law;



(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

          Respectfully submitted,

          */s/ Fred M. Bean*
          Fred M. Bean (0086756)
          Taurean J. Shattuck (0097364)
          David E. Byrnes (0086975)
          **THE SPITZ LAW FIRM, LLC**
          25200 Chagrin Boulevard, Suite 200
          Beachwood, OH 44122
          Phone: (216) 291-4744
          Fax:   (216) 291-5744
          Email: Fred.Bean@spitzlawfirm.com

          *Attorneys For Plaintiff*

## JURY DEMAND

Plaintiff Bentley Cooks demands a trial by jury by the maximum number of jurors permitted.

          */s/ Fred M. Bean*
          Fred M. Bean (0086756)

